UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TUYLIA R.,[1]

      **Plaintiff,**

v.

MARTIN O'MALLEY,
**Commissioner of Social Security,**

      **Defendant.**

Case No. 2:22-cv-2322
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Tuylia R. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.    PROCEDURAL HISTORY**

On October 1, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since May 29, 2018. R. 152, 165, 203–08. The application was denied initially and upon

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Martin O'Malley, the Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

reconsideration. R. 168–72, 176–78. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 179–81. ALJ Moises Penalver held a hearing on October 15, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 72–115. In a decision dated March 22, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 1, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 24–32. That decision became final when the Appeals Council declined review on February 25, 2022. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 23, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On June 24, 2022, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

> Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

3

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.    Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 51 years old on October 1, 2018, the date on which she filed her application for benefits. R. 31. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 26.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cervical degenerative disc disease, diabetes mellitus with lower extremity neuropathy, asthma, and morbid obesity. *Id*. The ALJ also found that Plaintiff's diagnosed hypertension, carpal tunnel syndrome, and right ankle fracture were not severe impairments. R. 27.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 28–30. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a home attendant. R. 30.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a marker, an order caller, and a tanning salon attendant—existed in the national economy and could be performed by Plaintiff. R. 31–32. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 1, 2018, Plaintiff's application date, through the date of the decision. R. 32.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded pursuant to Sentence Four of 42 U.S.C. § 405(g), with directions for the granting of benefits or, alternatively, for further proceedings;

Plaintiff also argues that the case should be remanded for consideration of new and material evidence pursuant to Sentence Six of 42 U.S.C. § 405(g). Plaintiff *Plaintiff's Brief,* ECF No. 21; *Plaintiff's Reply Brief*, ECF No. 26. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence; the Commissioner also opposes Plaintiff's request for a Sentence Six remand. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 23.

**IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE**

On December 9, 2020, Betty Vekhnis, M.D., performed a consultative orthopedic examination of Plaintiff. R. 432–37 (Exhibit 10F). Dr. Vekhnis summarized her examination findings as follows:

> [Plaintiff] walked into the office without an assistive device. She raised on heels and toes. She did shallow squat. She verbalized complaints.
>
> Examination of the cervical spine showed no vertebral tenderness, she was sensitive to light touch, no abnormal tilt, ranges were guarded, functional. Spurling maneuver was negative bilaterally.
>
> Examination of the lumbar spine showed tenderness on light touch, no skin folds asymmetry, she flexed to 60 degrees, SLRs were negative bilaterally in sitting and supine.
>
> Examination of upper extremities showed full range in right shoulder, elbows, wrists, and hands, no intrinsic muscle atrophy, *left shoulder showed AC join[t] tenderness, range was tender above 90 degrees in abduction and flexion*, IR [internal rotation] to L4 level, normal grip strength weakness, no sensory loss.
>
> Examination of lower extremities showed full range in hips, knees and ankles, bilateral knees showed [n]o swelling, no deformities, no synovitis, no focal weakness, no sensory loss.
>
> Impression: The claimant is a 53-year-old female with a history of neck pain and low back pain, *left shoulder pain*, bilateral knee arthritis and CTS. She uses both hands for fine and gross motor manipulations. She does not use an assistive device for ambulation.

R. 433 (emphasis added); *see also* R. 434 (reflecting range of motion measurements).

Dr. Vekhnis also completed a medical source statement of Plaintiff's ability to do work-related activities (physical). R. 425–31 (Exhibit 9F). According to Dr. Vekhnis, Plaintiff could occasionally (up to one-third of the time) lift and carry up to 20 pounds, could sit for up to 4 hours at a time, could stand/walk for up to 2 hours at a time, and could stand for a total of 4 hours in an eight-hour workday. R. 425-26. Dr. Vekhnis did not indicate the total number of hours that Plaintiff could walk during an eight-hour workday; in indicating the total number of hours that Plaintiff could sit in an eight-hour workday, the doctor checked the box for both 4 and 8 hours. R. 426. Dr. Vekhnis also opined that Plaintiff could use her right, non-dominant hand to frequently (from one-third to two-thirds of the time) reach overhead, reach in all other directions, and handle, finger, feel, and push/pull. R. 427. Plaintiff could never use her left, dominant hand for reaching overhead or in all other directions or for handling, but she could occasionally (up to one-third of the time) finger, feel, and push/pull with that hand. *Id*. Dr. Vekhnis attributed these limitations in the use of Plaintiff's left hand to loss of motion in her left shoulder and to carpal tunnel syndrome. *Id*. (reflecting the following handwritten note next to the chart indicating Plaintiff's left-hand limitations: "Lt shoulder loss of motion, [illegible] cts.").

**V.    DISCUSSION**

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Dr. Vekhnis' opinion, resulting in a flawed RFC. *Plaintiff's Brief*, ECF No. 21, pp. 17–25; *Plaintiff's Reply Brief*, ECF No. 26, pp. 8–10. For the reasons that follow, this Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests," sufficient to enable a reviewing court "to

9

perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision and the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

---

[4] As previously noted, Plaintiff's claim was filed on October 1, 2018.

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 416.920c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(1). As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 416.920c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 416.920c(b).

In the case presently before this Court, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work. Specifically, she can lift or carry up to 20 pounds occasionally and 10 pounds frequently. During an eight-hour workday, she can stand or walk up to four hours total, and sit up to six hours total, with regularly scheduled breaks. She can push or pull objects occasionally with both upper extremities, but can never use her right lower extremity for foot control operation. The claimant can occasionally use the left lower extremity for foot control operation. She can never climb ladders/ropes/scaffolds and never crawl. She can occasionally climb ramps/stairs, balance, stoop, crouch, and kneel. She should avoid constant rotation, flexion, or

11

extension of the neck. She should avoid concentrated and frequent exposure to bronchial irritants such as noxious fumes, odors, dust, and gases.

R. 28. In making this finding, the ALJ was "generally persuaded by" Dr. Vekhnis's lifting/carrying and standing/walking limitations, but found that Dr. Vekhnis "overstates" Plaintiff's postural and manipulative limitations, as follows:

> According to Dr. Tomor and Dr. Abbassi, the state agency medical consultants who reviewed the claimant's file in March 2019 and July 2019, respectively, she was able to perform light physical exertion involving occasional postural activities but no climbing of ladders/ropes/scaffolds (Exhibits B1A, B3A). Dr. Abbassi added that she should avoid concentrated exposure to extreme temperatures, humidity, and respiratory irritants.
>
> Based on findings that included lumbar and *left shoulder range of motion loss*, as well as cervical/lumbar tenderness, without gait abnormalities or the need for an assistive device (cane), extremity strength/sensation deficits, or grip strength loss, Betty Vekhnis M.D., who performed a consultative examination in December 2020, also concluded that the claimant would be capable of the lifting/carrying required of light physical exertion (lifting up to 20 pounds occasionally) (Exhibits B9F, B10F). Additionally, Dr. Vekhnis indicated that the claimant could sit for eight hours during a typical workday and stand/walk for two hours at a time and four hours total during a typical workday. With regard to the use of the left upper extremity, Dr. Vekhnis limited the claimant to occasional fingering, feeling, pushing, and pulling with no reaching or handling; however, she indicated that the claimant would be able to use her right upper extremity on a frequent basis. Dr. Vekhnis indicated that the claimant would be unable to climb ladders/ropes/scaffolds, balance, kneel, crouch or crawl, but that the claimant could occasionally climb ramps/stairs, stoop, and use foot controls.
>
> I am generally persuaded by the lifting/carrying and standing/walking limitations identified by Dr. Tomor, Dr. Abbassi, and Dr. Vekhnis; however, Dr. Vekhnis overstates the claimant's postural and manipulative limitations. While the overall record is consistent with restricting the claimant to light physical exertion, *there is no support for the extent of the* fingering, feeling, *reaching*, balancing, and crouching *limitations* that she identifies given that the claimant's treatment was limited to conservative care that did not involve modalities beyond medication management and routine follow up appointments. *Furthermore, progress notes do not contain supportive objective findings, such as hand/finger dexterity issues, grip strength loss, gait abnormalities that would require the use of an assistive device, extremity strength deficits, or extremity sensation abnormalities*. Diagnostic imaging did not reveal nerve root involvement and EMG results were limited to findings of mild severity.

R. 29–30 (emphasis added).

Plaintiff challenges the ALJ's consideration in this regard, arguing, *inter alia*, that strength findings were not inconsistent with Dr. Vekhnis' findings. *Plaintiff's Brief*, ECF No. 21, p. 24 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 26, p. 10. Plaintiff also argues that the objective record in fact supports Dr. Vekhnis' opined limitations because the record reflects, *inter alia*, left shoulder tenderness, limited range of motion in the left shoulder, and mild left C6 radiculopathy. *Plaintiff's Brief*, ECF No. 21, pp. 22–23; *Plaintiff's Reply Brief*, ECF No. 26, pp. 9–10. Plaintiff contends that the ALJ failure to accommodate these limitations through, *inter alia*, restrictions on reaching and handling is not harmless because the jobs of marker and order caller require frequent reaching and handling. *Plaintiff's Brief*, ECF No. 21, pp. 24–25 (arguing further that the vocational expert's testimony regarding the remaining job, tanning salon attendant, does not establish a sufficient number of available jobs because the vocational expert conceded that the number of available positions for that job had drastically declined). The Commissioner, however, that the ALJ properly considered the record and Dr. Vekhnis' opinion and that the evidence supports the ALJ's findings and RFC. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 23, pp. 22–28.

The Commissioner's arguments are not well taken. As a preliminary matter, the ALJ's reasoning is internally inconsistent. The ALJ discounted Dr. Vekhnis' opined manipulative limitations as lacking "support for the extent of the . . . reaching . . . limitations" because, *inter alia*, "progress notes do not contain supportive objective findings, such as hand/finger dexterity issues, grip strength loss, gait abnormalities that would require the use of an assistive device, extremity strength deficits, or extremity sensation abnormalities." R. 29–30. However, the ALJ also expressly acknowledged that Dr. Vekhnis based her opined limitations on other objective

13

findings, including loss of range of motion of the left shoulder. R. 29; *see also* R. 30 ("Although the claimant described further restrictions, her assertions are contradicted by her conservative level of care and the objective findings documented in progress notes, which do not generally include upper extremity neurological deficits or hand/finger dexterity issues.").

Moreover, the purported lack of objective findings highlighted by the ALJ—*i.e.*, hand/finger dexterity issues, grip strength loss, gait abnormalities, extremity strength deficits, or extremity sensation abnormalities—do not appear to relate to Plaintiff's ability to reach. *See O'Connor v. Kijakazi*, No. 4:21-CV-1077, 2022 WL 4348465, at *6, 9 (M.D. Pa. Sept. 19, 2022) (finding that substantial evidence did not support the ALJ's discounting of a medical opinion where "[t]he ALJ supported this conclusion by remaking that Plaintiff had 'negative straight leg raise testing bilaterally, no joint deformity, no sensory deficit, normal strength, no muscle atrophy, and intact bilateral grip strength.' . . . None of this evidence, however, addresses the limitation to Plaintiff's range of motion for overhead reaching observed by Dr. Stone and her treating sources'"); *Kichline v. Comm'r of Soc. Sec.*, No. CV 19-183, 2019 WL 2635542, at *1–2 (E.D. Pa. June 26, 2019) ("The [ALJ's] other findings – full strength, intact sensation, normal gait, and full spinal range of motion – are either inaccurate [where there was, *inter alia*, limited range of motion in the claimant's right shoulder and shoulder tenderness] or inapplicable to the alleged shoulder impairment. . . . The ALJ failed to cite substantial evidence to support his rejection of Dr. Black's opinion that Kichline's shoulder impairment limits her reaching."). In other words, the ALJ rejected, at least in part, Dr. Vekhnis' opined manipulative limitations for the wrong reason. Notably, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason *or the wrong reason*.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317) (emphasis added); *see also Nazario*, 794 F. App'x

14

at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

In addition, the ALJ expressly credited Plaintiff's shoulder pain and purported to accommodate that pain by limiting Plaintiff to only occasional pushing/pulling and avoiding constant neck movement. R. 30 ("In consideration of her neck, *shoulder*, and hand *pain*, she can push/pull no more than occasionally with the upper extremities and I find that she should avoid constant rotation, flexion, or extension of the neck.") (emphasis added). However, as previously discussed, the ALJ expressly noted that Dr. Vekhnis also based her opined limitations— including the limitation in Plaintiff's ability to reach—on, *inter alia*, the loss of left shoulder range of motion. R. 29; *see also* R. 427. Based on this record, the Court is unable to follow the ALJ's reasoning in rejecting Dr. Vekhnis' opined limitations resulting from Plaintiff's shoulder impairment. *See Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Moreover, the Court cannot conclude that the ALJ's error in this regard is harmless. As previously detailed, Dr. Vekhnis opined, *inter alia*, that Plaintiff could never handle or reach

overhead, nor could she reach in any other direction with her left hand and could only occasionally finger with her left hand. R. 427. Notably, the vocational expert testified that, of the three jobs identified as available to a claimant with Plaintiff's RFC, two of those jobs—marker and order caller—require frequent reaching, handling, and fingering. R. 108–09. The vocational expert also testified that the third job—tanning salon attendant—requires, *inter alia*, occasional reaching, handling, and fingering. R. 109.[5] The vocational expert therefore confirmed that a person who could never reach overhead and who could only occasionally reach in all other directions and who could only occasionally handle and finger would be precluded from those three jobs. R. 108–09, 112.

This Court therefore concludes that remand of the matter for further consideration is appropriate.[6] Moreover, remand is appropriate even if, upon further examination of Dr. Vekhnis' opinion and further consideration of the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once

---

[5] The record is also questionable as to the number of tanning salon attendant jobs in the national economy. The vocational expert initially testified that 19,000 of those jobs exist in the national economy. R. 104. However, in response to questioning by Plaintiff's counsel, the vocational expert later testified, "[I]t seems there's been a decline in these jobs and I apologize because maybe my numbers aren't up to date, but it is possible many of these facilities have closed due to the Covid-19 pandemic." R. 110–11 (testifying further that she could not say when her references were/software was last updated).

[6] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Vekhnis' opinion and of the RFC determination, the Court does not consider those claims.

16

more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## V.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  July 22, 2024                                           *s/Norah McCann King*
                                                              NORAH McCANN KING
                                                              UNITED STATES MAGISTRATE JUDGE